UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIHAD AKIL HASHIM,<br><br>    Plaintiff,<br><br>    v.<br><br>KERN COUNTY HOSPITAL AUTHORITY,<br><br>    Defendant. | Case No.: 1:21-cv-0773 JLT BAK (EPG)<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS<br><br>(Doc. 8) |

Jihad Akil Hashim was employed as a registered nurse for Kern Medical Center, which is owned and operated by Kern County Hospital Authority. Hashim asserts he suffered workplace discrimination based upon his race and skin color, and he was wrongfully terminated without an investigation or hearing following a false accusation. (*See* Doc. 1 at 112-122.) He seeks to hold Kern County Hospital Authority ("KCHA") liable for discrimination, defamation per se, and denial of due process. (*See id.* at 112.)

KCHA seeks dismissal of the claim for defamation per se pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting Hashim is unable to bring a claim for defamation against the public entity. (Doc. 8.) Hashim opposes dismissal, asserting KCHA is not entitled to immunity. (Doc. 10.) The Court finds the matter suitable for decision without oral arguments, and no hearing date will be set pursuant to Local Rule 230(g) and General Order 618. For the reasons set forth below, the motion to dismiss is **DENIED.**

1

**I.    Background and Procedural History**

Hashim is an African-American, Black male. (Doc. 1 at 114, ¶ 8.) He was employed at Kern Medical Center beginning in February 2019 until his termination on September 11, 2019. (*Id.* at 113, ¶ 1.) Hashim reports he "often informed" agents for KCHA "that he [was]… a target of racial, gender, and ancestry origin discriminations at defendant's hospital on several occasions." (*Id.* at 114, ¶ 9.)

According to Hashim, throughout his employment at Kern Medical Center, he "fulfilled all his obligations," and "his contracts were renewed." (Doc. 1 at 114, ¶ 10.) Plaintiff asserts he received "a new contract assignment by defendants pursuant to [a] Healthcare Worker Acceptance Agreement through Trustaff, an Employment Agency," on August 31, 2019. (*Id.*, ¶ 11.) He reports he accepted the assignment, and his employment at Kern Medical Center was to end on November 29, 2019. (*Id.*)

Hashim alleges that on September 10, 2019, he "was accused of abusing children at his workstation in the NICU based on an allegation from an unknown patient." (Doc. 1 at 114, ¶ 12.) He asserts KCHA sent an email to Trustaff on September 11, 2019, which indicated Hashim's employment was terminated and stating: "A mother called to voice concern about her baby's nurse. She had come in earlier yesterday evening to visit her baby and was watching the nurse with his other patient. She stated that the nurse was very rough while handling the other baby." (*Id.* at 115, ¶ 13.) Hashim asserts he was terminated without any investigation or hearing. (*Id.* at 115, ¶ 15; *see also id.* 119, ¶ 35.) He also contends, "Defendants made up the accusation as a pretext to terminate him from their employment." (*Id.*) According to Hashim, "Defendants … concocted the false story and terminated Plaintiff's employment because of his race, skin and ancestral origin." (*Id.* at 115-116, ¶ 16.)

Hashim reports he was not informed when the email was sent to Trustaff, and he was not "consulted for his consent to send the statement to another person." (Doc. 1 at 115, ¶ 14.) He alleges "Tim Ewin, Kathryn Mullins and other staff at Trustaff saw, read and understood that [Hashim] was incapable of nursing a child or an endangerment to children in the NICU, incompetent nurse, a child abuser in the NICU or any other place where [Hashim] could have been employed." (*Id.*) However, Hashim maintains "[t]he entire statement that [he] acted inappropriately is false." (*Id.* at 119, ¶ 36.)

On January 31, 2020, Hashim filed a complaint with the California Department of Fair Employment and Housing—which was amended on June 3, 2020— asserting "he was fired because of

his religion, race, color, gender-including physical disability, [and] he was discriminated upon and harassed because of his color." (Doc. 1 at 116, ¶ 20.) He reports that he received "Right-to-Sue Letters" on June 3, 2020. (*Id.*) Hashim filed a Claim Form with Defendants on June 16, 2020 and reports his to defendants for his contract "claims were denied entirely." (*Id.* at 117, ¶ 22.) In addition, Hashim asserts he "presented a timely Claim and tort claims… on June 16, 2020," and the claims were rejected on July 20, 2020. (*Id.*)

On October 13, 2020, Hashim filed a complaint in Kern County Superior Court, Case No. BCV-20-102398, seeking to state claims against KCHA, Kern Medical Center, KMC Management Inc., and Kern Medical Center Foundation. (*See* Doc. 1 at 1, ¶ 1; *see also id.* at 9-35.) The following week, he filed a "Petition for an Order Relieving Petitioner from Provisions of Government Code 945.4." (*Id.* at 2, ¶ 4.) The court granted the petition on December 15, 2020. (*Id.*, ¶ 8.) Hashim filed an amended complaint on April 13, 2021, at which time he removed several causes of action and named only KCHA as a defendant. (*Id.* at 3, ¶ 21; *see also id.* at 112-123.) Hashim now seeks to hold KCHA liable for the following causes of action: (1) workplace discrimination based on race and color, (2) defamation per se, and (3) failure to provide name-clearing hearing in violation of Plaintiff's right to liberty and due process. (*See id.* at 112.)

KCHA filed a notice of removal on May 12, 2021, thereby initiating the matter before this Court. (Doc. 1.) KCHA filed the motion to dismiss now pending on May 19, 2021. (Doc. 8.) Hashim filed his opposition to the motion on June 23, 2021 (Doc. 10), to which KCHA filed a reply on June 25, 2021 (Doc. 11).[1,2]

///

---

[1] As the parties were informed on May 13, 2021, the Eastern District of California has been in a state of judicial emergency while this motion was pending resolution. (*See* Doc. 5-3.) The action was assigned to the undersigned in January 2022. (*See* Doc. 16.)

[2] The matter was originally set for hearing a hearing date of July 2, 2021. Chijioke Ikonte, counsel for Plaintiff, reports the hearing date was mistakenly calendared for July 9, 2021, which resulted in the opposition being filed after the deadline. (Doc. 10 at 4, ¶¶ 2-3.) KCHA asserts the Court should not consider the untimely opposition pursuant to Local Rule 230. (Doc. 11 at 5-6.) Pursuant to Local Rule 230(c), "[a] failure to file a timely opposition *may* … be construed by the Court as a non-opposition to the motion." (LR 230, emphasis added.) The Local Rule is phrased in permissive terms, and the Court has discretion to either consider the opposition or construe the untimely filing as a non-opposition. Notably, the opposition was only two days late—because the Court was closed for a federal holiday on June 18, resulting in the filing deadline being continued to June 21, 2021— and KCHA had an opportunity to reply to the arguments presented. Accordingly, the Court exercises its discretion to consider the untimely opposition.

## II. Motion to Dismiss

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

The Supreme Court explained: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted).

Allegations of a complaint must be accepted as true when the Court considers a motion to dismiss. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740. (1976). A court must construe the pleading in the light most favorable to the plaintiff and resolve all doubts in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, legal conclusions need not be taken as true when "cast in the form of factual allegations." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

"The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent any pleading deficiencies can be cured by the plaintiff alleging additional facts, the Court should grant leave to

4

amend. *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

### III. Discussion and Analysis

KCHA seeks dismissal of the second cause of action for defamation per se. (Doc. 8 at 9.) KCHA notes it is "a public entity," and as a result it "is only subject to tort claims where authorized by statute." (*Id.*) KCHA contends Hashim is prohibited from bringing his defamation claim "[a]s a matter of law" because KCHA has immunity under Cal. Gov't Code § 821.6. (*Id.* at 12.) On the other hand, Hashim argues KCHA "is not immune from liability for defamation under the facts of this case." (Doc. 10 at 2, emphasis omitted.)

#### A. Liability of public entities

In general, in California "[a] public entity is not liable for an injury." Cal. Gov't Code § 815(a). However, a public entity may be held "liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Cal. Gov't Code § 815.2(a). Thus, a public entity—such as KCHA— may be liable under Section 815.2(a) to the same extent as its employees, if the employees acted in the scope of their employment. *Thomas v. City of Richmond*, 9 Cal. 4th 1154, 1157 (1995) (recognizing "[a] public entity, as the employer, is generally liable for the torts of an employee committed within the scope of employment if the employee is liable," but the public entity generally is not liable if the individual employee is immune). For example, a public entity may be held liable for defamation and slander by its employees when the employees acted within the scope of employment. *See Nadel v. Regents of Univ. of Cal.*, 28 Cal. App. 4th 1251, 1259 (1994) (applying Section 815.2(a) to defamation claims against the public entity); *City of Costa Mesa v. D'Alessio Investments, LLC*, 214 Cal. App. 4th 358, 377 (2013) ("case law supports the general proposition that a public entity and its employees may (in appropriate circumstances) be held liable for slander").

#### B. Immunity under Section 821.6

An exception to the liability of a public entity is found in Cal. Gov't Code § 821.6, which provides "[a] public employee is not liable for injury caused by his instituting or prosecuting any

5

judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." *Id.*  The provision is not limited to claims of malicious prosecution, as "California courts construe section 821.6 broadly in furtherance of its purpose to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits." *Gillian v. City of San Marino*, 147 Cal. App. 4th 1033, 1048 (2007) (holding that Section 821.6 immunized defendant officers from liability for claims of defamation and intentional inflection of emotional distress).

Under Section 821.6, investigations are part of "judicial and administrative proceedings." *Kemmerer v. County of Fresno*, 200 Cal. App. 3d 1426, 1436-1437 (1988).  Thus, Section 821.6 immunizes not only the act of filing or prosecuting a judicial or administrative complaint, but also extends to actions taken in preparation for such formal proceedings. *Gillian*, 147 Cal. App. 4th at 1048. "An investigation is cloaked in immunity because it is an essential step to instituting administrative proceedings." *Richardson-Tunnell v. School Ins. Program for Employees*, 157 Cal. App. 4th 1056, 1062 (2008).  Even where investigations are "carried out negligently, maliciously, or without probable cause," they may fall under Section 821.6 when a public employee acts within the scope of his or her employment. *Id.*, 157 Cal. App. 4th at 1062.

KCHA asserts the statement identified as the basis of Hashim's claim for defamation "falls under the immunity of section 821.6, since KCHA employees were engaged in an investigation as to Plaintiff's conduct, which led to [his] termination." (Doc. 8 at 12.)  KCHA notes "the alleged defamation occurred when KCHA informed Trustaff's employees that KCHA no longer desired to have Plaintiff work as a nurse at Kern Medical Center as a result of allegations that he had been rough with a child in the NICU." (*Id.*)  According to KCHA, "This statement was the result of a report received by KCHA from a patient, which directly led to the determination that Plaintiff should be terminated." (*Id.*)  Thus, KCHA asserts the identified "statement was made in conjunction with an investigation into the patient's allegations against Plaintiff," so the immunity of Section 821.6 applies.  (*Id.*)

On the other hand, Hashim contends the immunity of Section 821.6 "does not apply to this case." (Doc. 10 at 3.)  Hashim asserts "[t]he conduct implicated in this case was not an investigation." (*Id.*)  He notes in the complaint he alleged, "there was no investigation that was carried out." (*Id.*)

1  Furthermore, Hashim asserts "the communication was not taken in preparation of any formal
2  administrative or judicial proceedings." (*Id.*) Consequently, Hashim argues "the government
3  immunity that defendant claimed is not applicable to the facts of this case." (*Id.*)

4  As Hashim observed in his opposition, he specifically alleges that the statement was made by
5  KCHA to Trustaff "without investigations." (Doc. 1 at 119, ¶ 36.) Hashim also alleges "Defendants
6  made up the accusation as a pretext to terminate him from their employment." (*Id.* at 115, ¶ 15.)
7  According to Hashim, KCHA "concocted the false story and terminated Plaintiff's employment
8  because of his race, skin and ancestral origin." (*Id.* at 115-116, ¶ 16.) Although KCHA asserts the
9  statement was made in connection with an investigation, the Court must, at this juncture, take the
10 factual allegations of the complaint as true. *See Hospital Bldg. Co.,* 425 U.S. at 740; *see also Wrigley*
11 *v. Aquavia*, 2010 WL 4718780, at * (E.D. Cal. Nov. 10, 2010).

12 Previously, this Court declined to find "as a matter of law" that the immunity of Section 821.6
13 applied when the facts taken in the light most favorable to the plaintiff indicated a defamatory
14 statement was not made during an investigation. *Wrigley*, 2010 WL 4718780, at *8. Wrigley worked
15 as a licensed nurse practitioner for the California Department of Corrections and Rehabilitation and
16 asserted defendants wrote "a false and defamatory memorandum to the Health Care Manager," prior to
17 Wrigley's termination from her position with the CDCR. *Id.* at *1-2. Wrigley brought a defamation
18 claim against the defendants, who argued they were immune under Section 821.6. *Id.* at *6-7. The
19 Court observed: "taking the facts in the light most favorable to plaintiff, the memorandum was used
20 privately by the defendants in an effort to cause plaintiff's termination, and was never used as part of an
21 investigation or in preparation for formal proceedings." *Id.* at *8. Therefore, the Court denied the
22 motion to dismiss Wrigley's claim for defamation. *Id.*

23 Similarly, here, the facts taken in light most favorable to Hashim indicate the statement from
24 KCHA was fabricated to cause his termination, and the email was not sent in the course of any
25 investigation. (*See* Doc. 1 at 115, 119, ¶¶ 15-16, 36.) Consequently, the immunity of Section 821.6
26 may not be applied as a matter of law. *See Wrigley*, 2010 WL 4718780, at *8.

27 ///
28 ///

## IV. Conclusion and Order

For the reasons set forth above, the Court **ORDERS**: The motion to dismiss (Doc. 8) is **DENIED**.

IT IS SO ORDERED.

Dated:   **February 24, 2022**

UNITED STATES DISTRICT JUDGE