1
2
3
4
5
6
7
8      **UNITED STATES DISTRICT COURT**
9      **EASTERN DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| JIHAD AKIL HASHIM, | Case No. 1:21-cv-00773-JLT-CDB |
| Plaintiff, | ORDER RE MOTION FOR SUMMARY JUDGMENT AND SUPPLEMENTAL JURISDICTION; AND PERMITTING SUPPLEMENTAL BRIEFING |
| v. | |
| KERN COUNTY HOSPITAL AUTHORITY, a California Public Entity; and DOES 1 through 50, inclusive, | (Doc. 32) |
| Defendant. | |

## I.   INTRODUCTION

Jihad Hashim, a male, African American travel nurse who worked at a facility operated by Defendant Kern County Hospital Authority, advances three claims against Defendant: a state law race and color employment discrimination claim under California's Fair Employment and Housing Act (Doc. 1 at 117–18), a state law defamation claim (*id.* at 118–20), and a single federal constitutional due process claim arising under 48 U.S.C. § 1983. (*Id.* at 120–22.) Before the Court is Defendant's motion for summary judgment as to all claims in this case. (Doc. 34.) Plaintiff opposes the motion (Doc. 36), and Defendant filed a reply. (Doc. 41.) On June 17, 2025, the Court denied Plaintiff's motion to withdraw certain deemed admissions (Doc. 48), which has somewhat narrowed the disputes before the Court. For the reasons set forth below, the Court tentatively **GRANTS** Defendant's motion as to the sole federal claim in the case but will permit

1

supplemental briefing. Assuming the Court finalizes its tentative ruling, it will **DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION** over the remaining state law claims.

## II.   BACKGROUND[1]

Kern County Hospital Authority ("KCHA") is a local government entity that owns and operates Kern Medical Center. (KCHA's Statement of Undisputed Material Facts ("KSF") ## 69, 84, with Plaintiff's responses, Doc. 36-1.) In May 2019, KCHA entered into a Supplier Managed Services Client Terms and Conditions Agreement with RightSourcing, Inc. to supply contingent labor to KCHA. (KSF ## 1, 60, 70.) Trustaff Travel Nurses, LLC ("Trustaff") is a staffing agency in RightSourcing's supplier network and, pursuant to KCHA's Agreement with RightSourcing, provides contingent labor to KCHA. (KSF ## 2, 61, 71.) RightSourcing and Trustaff are responsible for paying the wages for the contingent labor that they provide to KCHA pursuant to the Agreement. (KSF ## 3, 72.)

On February 5, 2019, Mr. Hashim executed a Healthcare Worker Agreement with Trustaff to serve as a staff nurse in the NICU at Kern Medical Center. (KSF ## 4, 62, 73.) The assignment was set to last for 13 weeks from February 18, 2019 to May 25, 2019. (KSF ## 4, 62, 73.) After Mr. Hashim completed his 13-week assignment, Hashim executed another Healthcare Worker Agreement with Trustaff to serve as a nurse in the NICU at Kern Medical Center from May 26, 2019 to August 23, 2019, and then another from August 31, 2019 through November 29, 2019. (KSF ## 4, 62, 73.)

According to the Defense, in 2019 parents twice complained that Mr. Hashim was rough with a baby in his care; his supervisor's own observations confirmed at least one of those allegations; and Mr. Hashim did not react well to being counseled about the issue. (KSF ## 20–29.) Mr. Hashim disputes that he rough-handled a baby and at least arguably denies being counseled at all. (KSF ## 34, 42.) It is undisputed, however, that supervisory staff informed RightSourcing's onsite coordinator about the allegations. (KSF #35.) On September 11, 2019, Trustaff terminated Hashim's assignment to Kern Medical Center. (KSF #36.)

---

[1] The facts relevant to the Court's decision herein are undisputed unless otherwise noted. Because of the disposition of this motion, the Court does not address Defendant's objections to Plaintiff's evidence.

Mr. Hashim admits that Kern Medical Center's statements to RightSourcing did not affect his ability to get subsequent jobs through Trustaff. (KSF No. 47.) Following the termination of his assignment a Kern Medical Center, Trustaff continued to place Hashim in other NICU nursing positions as early as October 2019. (KSF No. 48.) Trustaff never told Hashim he was disqualified from any jobs because of what happened at Kern Medical Center and in fact Trustaff had no problems placing Hashim in another NICU position at a different hospital. (KSF No. 49.) Nor has anyone asked Hashim about the reasons he left Kern Medical Center during any subsequent job interviews. (KSF No. 50.)

### III.   LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim. *Id.*; *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim...") (internal quotation marks, citation omitted).

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact. *Id.* at 323. An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987). A party demonstrates summary judgment is appropriate by "informing the district court of the basis

3

of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show genuine issue of a material fact exists. Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 587. The party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits. *Id.* at 586 n.11; Fed. R. Civ. P. 56(c). Further, the opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

## IV.     DISCUSSION

### A.     Due Process Claim

Plaintiff's third cause of action alleges that Defendant violated his due process rights under the Fifth Amendment to the United States Constitution because Defendant failed to afford him a "name clearing hearing." (Doc. 1 at 120–22.) In order to state a cognizable procedural due process claim in a § 1983 action, the plaintiff must establish: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process." *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) (internal citation and quotation omitted). In cases where a public employee is "terminated for reasons 'sufficiently serious to stigmatize or otherwise burden the individual so that he is not able to take advantage of other employment opportunities,' and the public employer publicizes those stigmatizing charges," the "process" that must be afforded to the employee is a "name-clearing" hearing. *Perez v. City of*

4

*Roseville*, 926 F.3d 511, 523 (9th Cir. 2019).

Defendant moves for summary judgment on this claim, arguing that (1) "because Hashim cannot establish that he was a public employee of KCHA, Hashim was not legally entitled to any name-clearing hearing by KCHA"; and (2) the claim fails for the independent reason that it is undisputed Mr. Hashim never requested a name clearing hearing. (Doc. 32 at 24–26.) Though the Defense suggests the legal standards are clear on these two points, they are at least debatable. For example, the Ninth Circuit has not ruled out the possibility that independent contractors can have a constitutionally protected property interest in their continued independent contractor positions with the government. *Blantz v. Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 923–24 (9th Cir. 2013) (assuming without deciding that independent contractors can have a property interest in their continued positions for purposes of due process but finding "the mere fact of an independent contractor relationship with the state . . . insufficient, on its own, to create a constitutionally protected property interest," without "some source, recognized under state law, for [the plaintiff's] claimed entitlement to her position, not merely her unilateral expectation that it would continue"). In addition, as a district judge in this Court explained relatively recently, there is a split in authority as to whether a Plaintiff must request a name-clearing hearing before bringing a due process claim based on the failure to receive such a hearing.

> The majority of federal circuits addressing this question have determined a plaintiff is required to request a name-clearing hearing prior to filing a deprivation of liberty interest claim. *See Winskowski v. City of Stephen*, 442 F.3d 1107, 1110 (8th Cir. 2006); *Quinn v. Shirey*, 293 F.3d 315, 322 (6th Cir. 2002); *Gillum v. City of Kerrville*, 3 F.3d 117, 121 (5th Cir. 1993). However, neither the Supreme Court nor the Ninth Circuit have required plaintiffs to do so, and the district courts within the Ninth Circuit are almost evenly split on this issue. *See Howard v. Contra Costa Cty.*, 2014 U.S. Dist. LEXIS 26908, at *38-39, 2014 WL 824218 (N.D. Cal. Feb. 28, 2014) (recognizing conflict and collecting cases); *Caraway v. Town of Columbus*, 2018 U.S. Dist. LEXIS 54770, *22-23, 2018 WL 1582550 (D. Mont. Mar. 30, 2018) (same).

*Fitzgerald v. City of Fresno*, No. 1:21-cv-01409 AWI SAB, 2022 WL 1204707, at *11 (E.D. Cal. Apr. 22, 2022).

5

The Court finds it unnecessary to resolve those somewhat nuanced questions because there is a far more obvious defect in this claim: Defendant's actions had no impact on Plaintiff's employability in his chosen profession and therefore did not deprive him of any liberty interest. As Defendant explained in reviewing the factual record (Doc. 32-1 at 13) and referenced again in the context of moving for summary judgment on Plaintiff's defamation claim (*id*. at 21):

> Hashim admits that Kern Medical Center's statements did not affect his ability to get subsequent jobs through Trustaff. (KSF No. 47.) Following the termination of his assignment at Kern Medical Center, Trustaff continued to place Hashim in other NICU nursing positions as early as October 2019. (KSF No. 48.) Trustaff never told Hashim he was disqualified from any jobs because of what happened at Kern Medical Center and in fact Trustaff had no problems placing Hashim in another NICU position at a different hospital. (KSF No. 49.) Nor has anyone asked Hashim about the reasons he left Kern Medical Center during any subsequent job interviews. (KSF No. 50.)

(Doc. 32-1 at 17.) Plaintiff does not even attempt to dispute any of these facts. (Doc. 36-1, ## 47–50.) "A public employer can violate an employee's rights by terminating the employee if in so doing, the employer makes a charge that might seriously damage the terminated employee's standing and associations in his community or imposes on a terminated employee a stigma or other disability that forecloses his freedom to take advantage of other opportunities." *Blantz*, 727 F.3d at 925 (internal quotation and citation omitted). However, "the liberty interests protected by the Fourteenth Amendment are implicated only when the government's stigmatizing statements effectively exclude the employee completely from her chosen profession. Stigmatizing statements that merely cause reduced economic returns and diminished prestige, but not permanent exclusion from, or protracted interruption of, gainful employment within the trade or profession do not constitute a deprivation of liberty." *Id*. (internal quotation and citation omitted). Thus, regardless of whether Plaintiff is an independent contractor or (as he asserts) an employee of Defendant, and even if he did not have to request a name-clearing hearing under the circumstances, the name clearing claim is not viable on this record because Mr. Hashim has failed to produce any evidence suggesting his standing in his profession was harmed, let alone that such harm excluded him completely from his chosen profession. *See Carbonell v. Cnty. of San Diego*, No. 3:17-CV-64-CAB-BLM, 2017 WL 5176986, at *4 (S.D. Cal. Nov. 7, 2017) (dismissing name-clearing due

process claim brought by psychologist who, even though she was barred from further child welfare psychology work, did not allege she could not find work as a psychologist more generally).

In an abundance of caution, because this ground was raised by Defendant most directly in the context of the defamation claim, not the due process claim, the Court will afford Plaintiff an opportunity to file a brief supplemental opposition directing the Court's attention to any record evidence or caselaw demonstrating why the Court's conclusion is inappropriate

**B.      Supplemental Jurisdiction**

When a federal court has original jurisdiction over a claim, the court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action ... that they form part of the same case or controversy." 28 U.S.C. § 1367(a). State claims are part of the same case or controversy as federal claims "when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." *Kuba v. 1-A Agric. Assoc.*, 387 F.3d 850, 855–56 (9th Cir. 2004) (internal quotation marks and citation omitted).

Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right," and district courts "can decline to exercise jurisdiction over pendent claims for a number of valid reasons." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997) (internal quotation marks, citations omitted). Pursuant to 28 U.S.C. § 1367(c)(3), the Court may "decline supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction," and need not state its reasons for dismissal. *San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998); *Parra v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146, 1156 (9th Cir. 2013) (holding that district court did not abuse its discretion for declining to exercise supplemental jurisdiction and for dismissing remaining state law claims after it "dismissed the only claim over which it had original jurisdiction" at an "early stage of the litigation").

Here, though this case has been pending since 2021 and the pending motion is one for summary judgment, this Court has thus far not engaged in the merits of this case in depth, so it will decline supplemental jurisdiction if it finalizes the above ruling on the due process claim.

7

## V. CONCLUSION AND ORDER

For the reasons set forth above,

1. The Court tentatively finds that Defendant is entitled to summary judgment on Plaintiff's due process claim.

2. Within 21 days of the date of this order, Plaintiff may file a supplemental opposition **no longer than seven pages** in length directing the Court's attention to any record evidence or caselaw demonstrating why the Court's conclusion is inappropriate. If Plaintiff files a supplemental opposition, within 14 days of that filing, Defendant may file a response of equal or lesser length. Alternatively, the parties may stipulate to remand this action.

3. Assuming the above tentative ruling is finalized, the Court will decline supplemental jurisdiction over the remaining state law claims.

IT IS SO ORDERED.

Dated:   **June 26, 2025**

UNITED STATES DISTRICT JUDGE